IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| CQI, INC., a Montana Corporation, ROBERT PETERSON and CARRIE KLEIN, individually, | CV 08-134-BLG-CSO |
| Plaintiffs, | **ORDER ON PENDING MOTIONS** |
| vs. | |
| MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY, a foreign corporation, | |
| Defendant. | |

This action stems from Plaintiffs Robert Peterson, Carrie Klein, and CQI, Inc.'s claim for insurance benefits from Defendant Mountain West Farm Bureau Mutual Insurance Company ("Mountain West") for business personal property damaged during a windstorm. *Plaintiff's First Amended Complaint (Court Doc. 51) at 4, ¶ 13.*[1]

Currently pending before the Court are the following motions:

_____

[1]Unless otherwise noted, all page numbers refer to page numbers as used in the Court's electronic filing system.

1.   Mountain West's Motion for Partial Summary Judgment on Inventory and Bad Faith (Court Doc. 58);

2.   Mountain West's Motion for Partial Summary Judgment on Negligent Misrepresentation, Estoppel, Fraud, Individual Claims, and Punitive Damages (Court Doc. 61); and

3.   CQI's Motion to Strike the Affidavit of Patrick J. Crowe (Court Doc. 82).

Having reviewed the parties' arguments, the Court is prepared to rule on these motions.  The Court is mindful, however, that Mountain West's Motion for Leave to File Amended Answer to First Amended Complaint and Counterclaim, and Amend Scheduling Order (*Court Doc. 88*), not yet ripe for ruling, may significantly alter future proceedings in this case.

## I.   **BACKGROUND**

The facts of this case are well-known to the parties and are discussed in the Court's Order on Cross Motions for Partial Summary Judgment (*Court Doc. 32*).  They are only repeated here as necessary.

## II.   PARTIES' ARGUMENTS

### A.   Motions For Partial Summary Judgment

#### 1.  Mountain West's Arguments

Mountain West first moves for partial summary judgment "dismissing (1) Plaintiffs' claim on inventory, and (2) bad faith regarding the income loss claim alleged in the Amended Complaint." *Court Doc. 58 at 1.*  Mountain West's briefing raises additional issues, such as the "inventory payment bad faith claim" (*see Court Doc. 59 at 11)*, but the motion seeks relief only on the two issues listed.

With respect to the inventory claim, Mountain West contends that the record before the Court is "devoid of evidence on the damaged iron inventory value at the time of loss."  *Id. at 8.*  Mountain West argues that the only witness offered by CQI regarding the actual cash value ("ACV") of the inventory at the time of loss is Carrie Klein-Peterson and, while Mountain West concedes that Klein-Peterson is qualified to opine on the inventory's ACV, it argues that her deposition testimony states that she has no opinion regarding the value of the inventory at the time of loss.  *Id.*  Accordingly, Mountain West contends that the

opinion of its expert, Sherene Dixon, on the ACV of the lost inventory is uncontested and summary judgment is warranted. *Id. at 8-10.*

Mountain West next argues that because there is no evidence to support a breach of contract claim for failure to pay the ACV of the lost inventory, liability for the amount due under the ACV provision was never reasonably clear. Thus, it contends summary judgment is warranted with respect to CQI's bad faith claim stemming from a failure to make inventory payment. *Id. at 11.* Mountain West argues that because CQI does not know the value of the inventory at the time and place of loss, the amount due for that loss has never been reasonably clear. *Id.* Mountain West argues that CQI cannot use the retail value of its inventory to establish ACV at the time of loss because the inventory lost was "unfinished" and therefore not ready for sale. Thus, it contends that CQI has presented no evidence regarding the value of the inventory at the time of the loss. *Id. at 11-12.* Mountain West maintains there could have been no bad faith under these facts. *Id.*

Mountain West next argues that CQI's bad faith claim stemming

from a failure to pay income loss is subject to summary judgment. *Id. at 14.* Mountain West states that CQI obtained at least two different opinions regarding the amount of income it lost as a result of the windstorm damage. *Id.* CQI initially demanded a lost income payment of $200,458. *Id.* Mountain West paid $64,067.65, the amount recommended by its expert. *Id.* Mountain West concedes that there is a genuine issue of material fact regarding the amount owed for lost income. But Mountain West contends that because of the dispute regarding the amount due, and because it hired a certified public accountant ("CPA") to calculate CQI's lost income, and immediately paid the amount determined by the CPA, it could not have acted in bad faith. *Id.*

Mountain West also argues that it is entitled to summary judgment on CQI's claim that Mountain West caused it to go out of business. *Id. at 18.* Mountain West contends that CQI lost its Small Business Association ("SBA") loan due to its own failure to get its paperwork in order, and not because of Mountain West's failure to pay full retail value for its 2007 windstorm loss. *Id. at 20-21.*

In its second motion for partial summary judgment, Mountain West argues that CQI's claims for fraud, misrepresentation, and estoppel based on the actions of Mountain West's former agent, H. Josh Stagg, are subject to summary judgment because Stagg was always an independent contractor, insurance agents are not able to alter the coverage provided by a policy, and Stagg did not sell the policy at issue. *Brief in Support (Court Doc. 62) at 4, 8-9.*  Furthermore, Mountain West contends that any affirmative misstatements by Stagg in reference to the policy do not bind Mountain West, and are legally insufficient because oral misrepresentations contradicting the written policy terms are inadmissible parol evidence.  *Id. at 9.*  Additionally, Mountain West argues that the claims fail because a representation that something will be done in the future is not sufficient to establish a claim for negligent misrepresentation.  *Id.*   Mountain West further argues that CQI always knew that coverage decisions would ultimately be made by the claims department and not the agent, thus the representation is really only an expressed opinion and not a misrepresentation.  *Id. at 10.*  And, finally, Nick Purchio, the agent who

sold the policy at issue here, never made any representations to Plaintiffs regarding how claims would be paid.  *Id.*

Mountain West next argues that a verbal promise by an adjuster does not expand policy coverage, and therefore the promise of Ryan Shipman, a Mountain West adjuster following the incident, does not provide a sufficient basis for a fraud, misrepresentation, or estoppel claim.  *Id. at 11.*  In Montana, claims adjusting does not constitute a waiver of policy provisions.  *Id. at 16.*  Furthermore, Mountain West argues that Robert Peterson, as a sophisticated businessman, was obligated to read his policy, and that the policy was understandable to him.  *Id. at 15-16.* Consequently, Mountain West argues that it was unreasonable for CQI to rely on Shipman's alleged representation regarding how the claim would be paid.  *Id. at 17.*  Therefore, Mountain West contends CQI's claims for misrepresentation and estoppel fail.  *Id.*

Regarding CQI's equitable estoppel claim, Mountain West argues that estoppel is not favored by the law, and that no past or existing material fact was represented to CQI.  *Id at 18-19.*  At most, Mountain West contends there was a promise of future conduct.  *Id. at 19.*

According to Mountain West, this is insufficient.

Mountain West next argues that the individual claims of Robert Peterson and Carrie Klein-Peterson are subject to summary judgment. *Id. at 19.* Mountain West argues that these individuals are not proper parties because all claims arise "out of the alleged underpayment for the inventory and income loss" of CQI. *Id.* CQI purchased and owned the entire inventory at issue in this claim. *Id.* Mountain West argues that even though the Petersons are the sole shareholders of CQI, it is a distinct legal entity; and it is the legal entity that owns these claims. *Id.*

Mountain West's final argument on this motion is that it is entitled to summary judgment on CQI's punitive damage claims. *Id. at 20.* Mountain West contends that there is a "total absence of evidence of actual fraud or actual malice in the case record." *Id.*

### 2.     CQI's Responses

In response to Mountain West's motions, CQI argues that there are genuine issues of material fact precluding summary judgment. First, CQI argues that summary judgment is precluded with respect to

its breach of contract claim regarding payment of ACV. *Br. in Response (Court Doc. 72) at 9.* CQI points to evidence regarding historical retail sales figures and the deposition testimony of Klein-Peterson that the inventory's ACV was its retail value to demonstrate genuine issues of material fact. *Id. at 9-10.*

Next, CQI argues that there are genuine issues of material fact regarding whether Mountain West violated Montana's Unfair Trade Practices Act. In support of this argument, CQI contends that Mountain West's claims adjuster, Ryan Shipman, misrepresented the policy's provisions, and that this constitutes bad faith. *Id.* at 15-16. CQI argues that this is a separate and distinct claim from common law negligent misrepresentation. *Id.* Next, CQI contends that Mountain West did not conduct an adequate investigation regarding the amounts to be paid on CQI's claims, *id.* at 19-27, and failed to effectuate a prompt or fair settlement of CQI's claims because it refused to consider historical retail sales figures for CQI's inventory, but paid full retail value on a similar, subsequent claim. *Id.* at 27-31.

CQI also argues that genuine issues of material fact remain as to

whether Mountain West's agents committed fraud or negligently misrepresented the policy provisions in Mountain West's insurance contracts when they solicited and sold BPM Policy 02331. *Id.* at 31. CQI contends that Mountain West's agents represented to it that its inventory was insured at its full retail value. *Id. at 32.* CQI contends the policy was sold based on the retail value of the inventory, and that premiums were calculated and accepted based on the retail value of the inventory. *Id. at 33.* Furthermore, CQI contends that Heather Peters, a current Mountain West Agent, verified that ACV is the retail value of CQI's inventory. *Id.*

In support of their claims for promissory estoppel, CQI contends that genuine issues of material fact remain regarding Mountain West's "consistent, clear and unambiguous promise to Plaintiffs." *Id. at 35.* CQI argues that there are material issues of fact regarding their reliance on those promises with respect to the loss of their SBA loan and the resulting loss of their business. *Id. at 35-37.*

CQI next argues that genuine issues of material fact remain regarding their claim for punitive damages because whether actual

fraud or actual malice exist "depends on what the insurer knew or disregarded when it consider[ed] the subject claim." *Id. at 40.* CQI argues that Mountain West knew of risks to CQI's SBA loan when it failed to pay the retail value on CQI's claims. *Id.* Consequently, CQI argues that a jury must determine if this constitutes actual malice. *Id.*

CQI also argues that because Robert Peterson and Carrie Klein-Peterson are named insureds on the subject policy and suffered harm as a result of the alleged violations of the policy and Montana law, they are proper parties to the suit and have standing to bring tort claims. *Id. at 42.*

### B.   CQI's Motion To Strike Affidavit

CQI filed a motion to strike the affidavit of Patrick J. Crowe ("Crowe Affidavit"). *Court Doc. 82.* The Crowe Affidavit was filed as an exhibit to Mountain West's reply brief in support of its motion for partial summary judgment on inventory, income, and bad faith (Court Doc. 81). CQI contends that this affidavit must be stricken pursuant to Rules 37(c)(1) and 56(e)(1). In support of this motion, CQI argues that the Crowe Affidavit is improper under Rule 56 because Mr. Crowe's

testimony is not admissible evidence.  *Court Doc. 83 at 4.*  Because Mr.

Crowe was not disclosed as an expert under Rule 26, CQI contends that

his testimony would not be admissible at trial, and as a result, he

cannot submit an affidavit in support of a summary judgment motion.

*Id. at 4-5.*

CQI argues that premium calculation methodology was properly

put at issue in the pleadings and CQI's discovery requests; thus it

contends Mountain West was on notice and should have disclosed an

expert on the topic by the expert disclosure deadline.  *Id.; Reply Brief in*

*Support (Court Doc. 85) at 3.*  Additionally, Mountain West agents

Stagg and Purchio were listed as persons with knowledge of Mountain

West's policy underwriting practices in discovery responses, and Stagg

was questioned regarding his training to insure customer inventory at

retail value.  *Id. at 6-7.*

Furthermore, CQI states that the reasons offered by Mountain

West for not disclosing Mr. Crowe earlier prove neither justification or

harmlessness as required for late disclosure, thus CQI contends it is

appropriate to strike the Crowe Affidavit per Rule 37(c)(1).  *Id. at 5-7.*

In response to CQI's motion to strike, Mountain West argues that
CQI misunderstands the requirements for Rule 56(e) affidavits. *Court
Doc. 84 at 3.* Mountain West contends that Rule 56(e) concerns itself
with "admissibility under the Federal Rules of Evidence, not
admissibility under a scheduling order." *Id.* Mountain West argues
that a summary judgment affiant must be "competent to testify and
must have personal knowledge of the matters sworn to." *Id.* Mountain
West argues that Mr. Crowe handles Mountain West's actuarial work,
and his professional qualifications objectively prove his competency."
*Id.* Thus, Mountain West argues that his affidavit is admissible under
Rule 56(e).

Mountain West concedes that opposing expert affidavits would
typically defeat summary judgment, but argues that the situation
presented here is different. Mountain West argues that because the
Crowe affidavit is submitted to show that certain CQI evidence is not
competent and should not be relied upon by the Court, *id.*, the situation
is distinct from issues regarding late disclosed trial experts. *Id. at 5.*
Thus, it argues the affidavit is proper because "[t]he court may consider

inadmissible materials in regards to a *Daubert* motion." *Id. at 4*

*(internal quotation marks omitted).*

## III.  <u>ANALYSIS</u>

### A.  <u>Motion to Strike</u>

Rule 56(e) governs affidavits filed with respect to summary

judgment motions.  It states, in pertinent part:

> A supporting or opposing affidavit must be made on personal
> knowledge, set out facts that would be admissible in evidence, and
> show that the affiant is competent to testify on the matters
> stated.

Fed. R. Civ. P. 56(e)(1).  "[O]pinion testimony that would not be

admissible if testified to at the trial may not properly be set forth in

such an affidavit."  *DePinto v. Provident Security Life Insurance*, 374

F.2d 50, 55 (9th Cir. 1967).  Thus, "it [is] incumbent upon the court to

determine whether the proffered proof would be admissible in evidence

upon a trial."  *Paramount Pest Control Service v. United States*, 304

F.2d 115, 116 (9th Cir. 1962) (affidavits cannot be considered on motion

for summary judgment if in violation of parol evidence rule).

In addition to the requirements of Rule 56, Local Rule 56.1(d)

states:

> Upon filing of the Statement of Undisputed Facts and Statement
> of Genuine Issues, the factual record for the motion is deemed
> complete.  Parties may not file further factual materials except
> with leave of the Court upon a showing that factual materials
> were reasonably omitted from the Statement of Undisputed Facts
> or Statement of Genuine Issues.

The Crowe Affidavit was filed as an exhibit to Mountain West's Reply

Brief.  *See Court Doc. 81-3.*  Mountain West did not seek leave of Court

prior to filing this additional factual material.

The Court finds that this was not new material the need for which

Mountain West could not have anticipated.  In its Complaint and

Amended Complaint, CQI refers to the payment of premiums in

conjunction with the value of inventory insured and the type of

coverage needed.  *Court Doc. 4 at 2, ¶¶ 7-11; Court Doc. 51 at ¶¶ 11,

46, 63.*  Mountain West's premium calculations were the subject of

discovery requests.  *See Court Doc. 85-1 at 3.*  The Court has previously

held that the ACV of the inventory is to be determined by the jury

"after considering all relevant evidence as to the value of the goods ... ."

*Court Doc. 32 at 20.*  Consequently, evidence regarding the various

factors concerning ACV could have been anticipated by Mountain West.

The Court concludes that Mountain West has not demonstrated that

the Crowe Affidavit was reasonably omitted from its Statement of

Undisputed Facts.

Moreover, the Court finds the affidavit itself unclear and

somewhat confusing.  For example, paragraph 3 of the affidavit

contains a series of questions.  The questions themselves are not clear.

It is also unclear whether Crowe is presenting his responses set forth in

paragraphs 4, 5 and 6 solely as opinion testimony or also as fact

testimony based on his knowledge and experience working as Mountain

West's appointed actuary.

Mountain West represents that the Crowe affidavit is expert

opinion testimony offered "for the purpose of showing that certain

testimony CQI relies upon at the summary judgment stage is not

competent evidence." *Court Doc. 84 at 3.*  Mountain West repeatedly

discusses what may be admissible in connection with *Daubert* motions,

but it is Mountain West's partial summary judgment motion that is at

issue, not a *Daubert* motion.

In spite of the foregoing concerns, the motion to strike will be

denied.  Consideration of the affidavit does not alter the Court's

conclusion that the motion for partial summary judgment on inventory issues must be denied.  Insofar as the motion seeks to preclude Crowe's testimony, the Court does not have enough information to determine whether Mr. Crowe may testify as a fact witness.  Also, that part of the motion may be moot because Mountain West has not indicated whether it will call Mr. Crowe as a trial witness.

### B.  **Motions for Partial Summary Judgment**

#### 1.  **Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *Wilderness Development, LLC v. Hash*, 606 F. Supp. 2d 1275, 1279 (D. Mont. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact finder to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986) (cited in *Wilderness Development*, 606 F. Supp. 2d at 1279). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations,

-18-

and is required to draw all inferences in a light most favorable to the non-moving party." *Wilderness Development*, 606 F. Supp. 2d at 1279 (citing *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997) (*abrogated on other grounds as noted in Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008)). While summary judgment is not a disfavored procedural shortcut, *Celotex Corp.*, 477 U.S. at 323, it should never be used "as a substitute for trial on the facts and law." *Cox v. English-American Underwriters*, 245 F.2d 330, 333 (9th Cir. 1957).

"Reasonable doubts as to the existence of material factual issue[s] are resolved against the moving part[y]... ." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). And, although federal law controls the applicable standard of review, the Court notes that this federal law is consistent with Montana law. *See Lorang v. Fortis Ins. Co.,* 192 P.3d 186, 195 (Mont. 2008) ("If there is any doubt as to whether a genuine issue of material fact exists, that doubt must be resolved in favor of the party opposing summary judgment.")

## 2.   <u>Inventory Claim</u>

Mountain West contends that no evidence exists regarding the

ACV of the inventory at the time of loss.  *Court Doc. 59 at 8.*  Mountain
West contends that Carrie Klein-Peterson, the only expert witness
designated by CQI on inventory value, has expressed no opinion on the
subject of inventory value.  Mountain West cites Klein-Peterson's
deposition statement that she "honestly [doesn't] have an opinion" on
the ACV of the inventory at the time of loss because she "[doesn't] sell
it that way."  *Id.*

Mountain West's arguments rest heavily on the distinction
between "unfinished" or "raw" inventory and "finished" inventory.  *Id.
at 6-8.*  Mountain West describes in detail CQI's process of preparing
inventory for sale to customers, noting that the pieces were stored
outside until selected by a designer, at which time they were taken
inside, washed, scraped with wire brushes, clear coated with a
verathane mixture, and then allowed to dry.  *Id. at 6.*  Mountain West
argues that this was a time-intensive process which distinguishes
unfinished, raw inventory from finished, ready-to-sell inventory.
Because the inventory lost in the windstorm was unfinished, Mountain
West questioned Klein-Peterson regarding the value of the inventory in

its raw state, and argues that based on her deposition testimony the inventory had no value at the time of loss. *Id. at 9.*

The Court finds that genuine issues of fact preclude summary judgment on the inventory claim. Klein-Peterson testified that the finishing process is "quick," and that the inventory was turned over to customers after it was cleaned and clear coated. *Id. at 9.* Contrary to Mountain West's arguments, Klein-Peterson's testimony does not ask the Court to "teleport the inventory to a different time and place in the future... ." *Id. at 12.* Instead, she states that the value of the inventory pre- and post- clear coating is the same. Stated another way, Klein-Peterson's testimony states that the value of the unfinished and finished inventory are one in the same. *See id.*

Mountain West concedes that Klein-Peterson is qualified to opine regarding the inventory's value. *Id. at 8-9.* Mountain West's own expert, Sherene Dixon, has offered a different opinion regarding the inventory lost by CQI. *Id. at* Consequently the evidence before the Court on the value of the lost inventory is disputed. It is for the jury to decide whether the difference between finished and unfinished

inventory is meaningful in determining the ACV of the inventory lost.

Accordingly, the Mountain West's motion will be denied in this respect.

### 3.   Bad Faith regarding Inventory

As noted *supra*, Mountain West did not move for summary

judgment on this basis.  Nonetheless, because the parties did address it

in their briefing, the Court comments as follows.

Amongst other duties, insurers are obligated to "effectuate

prompt, fair, and equitable settlements of claims in which liability has

become reasonably clear." § 33-18-201(6), MCA.  The Montana Supreme

Court has recently clarified the meaning of the term "reasonably clear"

in this context.  In *Peterson v. St. Paul Fire and Marine Ins. Co.,* 2010

WL 3326706 (Mont. Aug. 24, 2010), the court stated:

> [W]e hold that liability is 'reasonably clear' when a reasonable
> person, with knowledge of the relevant facts and law, would
> conclude, for good reason, that the defendant is liable to the
> plaintiff.  This is an 'objective test'....A finding of liability by a
> trier of fact under the preponderance of evidence standard in the
> negligence action does not necessarily imply that liability was
> 'reasonably clear' when the insurer was adjusting the claim.
> Instead, 'reasonably clear' liability is established when it is 'clear
> enough' that reasonable people assessing the claim would agree
> on the issue of liability, and that the facts, circumstances, and
> applicable law leave little room for objectively reasonable debate
> about whether liability exists.

*Id.* at ¶ 39.

Mountain West contends that because CQI has no evidence regarding the ACV of the inventory at the time of loss, there could have been no bad faith.  Mountain West also contends that Klein-Peterson's opinion regarding the inventory's value is legally unsound.  But, in light of the fact issues presented by Klein-Peterson's opinion regarding the ACV of the inventory, the basis for summary judgment asserted by Mountain West is insufficient.  There are fact issues.

### 4.    Bad Faith regarding Income Claim

Mountain West has moved for summary judgment regarding CQI's claim for bad faith regarding the income loss claim.  Mountain West concedes that genuine issues of material fact exist regarding CQI's income loss.  *Id. at 17.*  Both sides have engaged various experts to opine regarding CQI's income loss resulting from the windstorm. CQI has employed Dave Deming, a former vice president at Stockman Bank; Janelle Crowley, Robert Peterson's accountant; and Dave Johnson.  Mountain West has engaged Ann Deegan, a certified public accountant ("CPA") and Kevin Duecker, another CPA.

These experts have reached varying conclusions regarding CQI's income loss as a result of the 2007 windstorm. *See, e.g., Court Doc. 73-8 (Deming Affidavit) at ¶ 10; Court Doc. 73-40 (Letter from Paul Odegaard to David Legare) at 2.* Mountain West has made payments to CQI in the amounts determined by its experts. *Court Doc. 73-23 at 3, 4.*

In light of all the evidence, the Court concludes that there is ample room for objectively reasonable debate regarding the lost income owed under the policy. Consequently, Mountain West's liability for a greater amount of lost income than already paid is not "reasonably clear" as that term has been defined by the Montana Supreme Court. Accordingly, Mountain West's motion for summary judgment on this claim will be granted.

### 5.   **Promissory Estoppel, Negligent Misrepresentation, and Fraud Claims**

### (a)   **Promissory Estoppel**

"The doctrine of equitable estoppel is predicated on equity and good conscience, and will grant relief to prevent a party from suffering a gross injustice at the hands of the other party who brought about the

situation or condition." *Avanta Federal Credit Union v. Shupak*, 223

P.3d 863, ¶ 41 (Mont. 2009).  In *Lee v. USAA Cas. Ins. Co.,*  22 P.3d

631, 639 - 640 (Mont. 2001), the Montana Supreme Court held that "in

some limited instances, an assurance of coverage by an insurance agent

that conflicts with an unambiguous policy may afford an insured relief

under such theories as waiver or estoppel."  Where the policy is

arguably ambiguous, the theories apply with equal force.  *Id. at 639*

*(citing Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.* (2000),

78 Cal.App.4th 847, 93 Cal.Rptr.2d 364, 383 (holding that an insurance

agent may bind insurer in giving ambiguous policy provision an

interpretation that coverage exists)).

> To succeed on an estoppel claim, a party must prove the following

six elements by clear and convincing evidence:

> (1) the existence of conduct, acts, language, or silence amounting
> to a representation or concealment of a material fact; (2) these
> facts must be known to the party estopped at the time of his
> conduct, or at least the circumstances must be such that
> knowledge of them is necessarily imputed to him; (3) the truth
> concerning these facts must be unknown to the other party
> claiming the benefit of the estoppel at the time it was acted upon
> by him; (4) the conduct must be done with the intention, or at
> least the expectation, that it will be acted upon by the other
> party, or under the circumstances both natural and probable that

it will be so acted upon; (5) the conduct must be relied upon by the other party and, thus relying, he must be led to act upon it; and (6) he must in fact act upon it in such a manner as to change his position for the worse.

*Id.* at ¶ 42.

Here, genuine issues of material fact remain regarding CQI's estoppel claim. Amongst other things, Robert Peterson has stated under oath that he was led to believe that ACV referred to the retail value of CQI's inventory. *Court Doc. 63-2 (Depo. R. Peterson) at 9-10 (Depo. Pgs. 93:18-25; 94:1-25; 95:1-25; 96:1-25; 97:1-22).* Former Mountain West agent Stagg testified when selling the insurance policy to CQI it was insured at retail value. *Court Doc. 73-17 (Depo. J. Stagg) at 40:21-25, 41:1-10.* Additionally, current Mountain West employee Heather Peters stated under oath that she calculated CQI's premiums based, at least in part, on the retail value of the inventory being insured, *Court Doc. 73-13 (Depo. H. Peters) at 61:18-25; 62:1-8; 46:2-6*, and stated on policy materials that ACV was the equivalent of retail value, *Court Doc. 73-36.* And, Mountain West Agent Ryan Shipman represented to CQI's banker David Deming that the loss would be paid at retail value. *Court Doc. 73-7 (Depo. D. Deming) at 31:16-25, 32:1-25;*

*33-1-25.* Furthermore, Deming went on to explain that the "adverse change" caused by the windstorm was at least a factor in why CQI could not close on its SBA loan, *Court Doc. 73-7 at 78:1-17, 81:4-21.*

These disputed facts demonstrate the existence of genuine fact issues regarding whether Mountain West should be estopped from paying less than the retail value of CQI's inventory loss. Whether these representations were made and, if so, the effect of these representations are questions that must be considered by the jury. Consequently, Mountain West's motion with respect to CQI's estoppel claim must be denied.

### (b) Negligent Misrepresentation and Fraud

Mountain West has also moved for summary judgment with respect to CQI's negligent misrepresentation and fraud claims. Negligent misrepresentation requires proof of the following elements:

1. the defendant made a representation as to a past or existing material fact;

2. the representation must have been untrue;

3. regardless of its actual belief, the defendant must have

made the representation without any reasonable ground for
believing it to be true;

4.      the representation must have been made with the intent to
induce the plaintiff to rely on it;

5.      the plaintiff must have been unaware of the falsity of the
representation; it must have acted in reliance upon the
truth of the representation and it must have been justified
in relying on the representation; and

6.       the plaintiff, as a result if his or her reliance, sustained
damage.

*Deichl v. Savage*, 216 P.3d 749, 753 (Mont. 2009).  "[N]egligent
misrepresentation does not require 'intent to deceive' but, ... intent to
induce reliance on a representation without any reasonable ground to
believe that it is true."  *Tripp v. Jeld-Wen, Inc.*, 112 P.3d 1018, ¶ 30
(Mont. 2005).

The elements of a fraud claim are:

1.      A representation;

2.      Falsity of the representation;

3.      Materiality of the representation;

4.      Speaker's knowledge of the falsity of the representation or

         ignorance of its truth;

5.      Speaker's intent it should be relied upon;

6.      The hearer's ignorance of the falsity of the representation;

7.      The hearer's reliance on the representation;

8.      The hearer's right to rely on the representation; and

9.      Consequent and proximate injury caused by the reliance on

         the representation.

*Wortman v. Griff,* 651 P.2d 998, 1000 (Mont. 1982) (*citing Van Ettinger v. Pappin,* 588 P.2d 988 (1976).

         Given the state of the pleadings and the factual record before the Court, the Count cannot conclude that summary judgment is appropriate.  The parties have presented voluminous documentation of their respective arguments, including extensive deposition testimony.  Evaluating credibility, weighing evidence, and drawing factual inferences are all functions reserved for the jury.  *See Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  The Court concludes here

that there are fact disputes on the fraud and negligent

misrepresentation claims so as to preclude summary judgment at this

time.  If warranted, claims without adequate evidentiary support can

be eliminated on trial motions under Fed. R. Civ. P. 50.

### 6.    <u>Individual Capacity Claims</u>

Mountain West has also moved for summary judgment on all

claims asserted by Robert Peterson and Carrie Klein-Peterson,

individually.  As a general rule, individual shareholders cannot

disregard the corporate entity and sue on their own behalf for causes of

action belonging to the corporation.  *See Stott v. Fox*, 805 P.2d 1305,

1308-09 (Mont. 1990).  Allowing individual shareholders to go forward

on their own behalf would allow them to "invoke the corporate entity

only when it would be to their advantage."  *Id.* (internal quotation

marks omitted).

CQI cites *Tynes v. Bankers Life Co.*, 730 P.2d 1115, 1121 (Mont.

1986) for the proposition that privity is not required for the Petersons

to have standing.  But *Tynes* is distinguishable from the situation at

hand.  In *Tynes,* the father of an insured brought suit against the

insurer for promissory estoppel, even though he was not an insured

under the policy or an intended third-party beneficiary.  *Id*.  His claims

were permitted to go forward, however, because he had personally

guaranteed certain payments for his son's medical care based on

representations made to him by the insurer.  *Id*.  Here, Robert Peterson

and Carrie Klein have not alleged a similar injury.  Their claims are

akin to those of the corporate shareholders discussed in *Stott, supra.*

The gravamen of the amended complaint is Mountain West's

refusal to pay claims made by CQI.  Consequently, the causes of action

pled here belong to CQI.

Both parties indicate that these individuals are listed as

additional insureds on the policy.  Although this issue is not here

determinative, the Court does note that no document it reviewed

identifies these individuals as additional insureds.  And, the policy

states that the "Insured is a Corporation."  *Court Doc. 5-2 at 2.*

Consequently, the Court concludes that summary judgment is

appropriate with respect to Robert Peterson and Carrie Klein-

Peterson's individual capacity claims.

### 7.   <u>Punitive Damages Claim</u>

When available, a plaintiff may obtain punitive damages when the defendant has been found guilty of actual fraud or actual malice. § 27-1-221, MCA.  Here, CQI argues that Mountain West acted with actual malice.  *Court Doc. 72 at 40.*  A defendant is guilty of actual malice when

> the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
> (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

§ 27-1-221(2).

"[P]roof of actual malice depends on what the insurer knew or disregarded when it considered the subject claim."  *Lorang*, 192 P.3d at ¶ 92.

Mountain West claims that the record is devoid of any proof of actual fraud or actual malice.  *Court Doc. 62 at 20-22.*  But, CQI has presented evidence demonstrating that it informed Mountain West that it was at risk of losing its SBA loan and possibly its business because of

Mountain West's failure to make adequate payment on the claims. *See Court Docs. 73-41 (Letter from David Legare to Paul Odegaard regarding potential risks to CQI's business) & 73-42 (Follow-up letter from David Legare to Paul Odegaard regarding risks to CQI's business).* This evidence is sufficient to preclude summary judgment on CQI's punitive damages claims.

## IV.   <u>CONCLUSION</u>

Based on the foregoing,

IT IS ORDERED that CQI's Motion to Strike (Court Doc. 82) is **DENIED**.

IT IS FURTHER ORDERED that Mountain West's motions (Court Docs. 58 & 61) are GRANTED in part and DENIED in part as follows:

1.     Partial summary judgment is granted with respect to CQI's claims for bad faith regarding payment on CQI's lost income claim  and Robert Peterson's and Carrie Klein's  individual capacity claims.

2.     Partial summary judgment is denied with respect to all

other claims.

DATED this 7th day of October, 2010.

/s/ Carolyn S. Ostby
United States Magistrate Judge